

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| DMP:NCG | *271 Cadman Plaza East* |
| F. #2022V03225 | *Brooklyn, New York 11201* |

December 5, 2022

<u>By ECF</u>

The Honorable Nina Gershon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Shahawar Matin Siraj
     <u>Criminal Docket No. 05-104 (NG)  </u>

Dear Judge Gershon:

   The government respectfully submits this letter responding to the defendant Shahawar Matin Siraj's motion for compassionate release and reduction in sentence pursuant to Title 18, United States Code, Section 3582(c)(1)(a) ("Motion" or "Def. Mot."). <u>See</u> ECF Nos. 214, 215. In his motion for compassionate release and reduction in sentence, the defendant requests that the Court order his immediate release from custody in light of his characteristics at the time he was convicted, the original sentence imposed in this case, his rehabilitation while incarcerated, his health conditions, the conditions of his confinement, and the risks presented by COVID-19. As explained below, the Court should deny Siraj's Motion. The reasons set forth in his Motion do not overcome his failure to present an extraordinary and compelling reason for his early release nor do they overcome the weight of the sentencing factors in 18 U.S.C. § 3553(a).

I.  <u>Background</u>

   The Court is familiar with the offense conduct and procedural history in this case, having presided over the defendant Siraj's trial, sentencing and post-trial motions. The below provides an overview of Siraj's offense conduct, the relevant procedural history of this case, and updated information regarding conditions at Federal Correctional Institution ("FCI") Otisville, where the defendant is incarcerated, related to COVID-19.

  A. <u>Offense Conduct</u>

   The defendant was charged in a four-count superseding indictment in connection with a conspiracy to bomb the 34th Street Herald Square subway station in New York City. ECF No. 94. The offense conduct is set forth in the Presentence Investigation Report ("PSR").

Beginning in late 2003, Siraj expressed his dislike of United States foreign policy to a confidential informant ("CI") who spent time with Siraj at the bookstore where Siraj worked and the mosque where he worshipped.  PSR ¶¶ 7-8.  In June 2004, the CI began to record conversations between himself, Siraj, and Siraj's friend whom he introduced to the CI, James Elshafay.  Id. ¶ 8, 10; see also Addendum to PSR at 1.

In recorded conversations, Siraj began discussing the use of explosive devices and detonating such devices in New York City to cause harm to United States military personnel and law enforcement.  PSR ¶ 9.  Siraj informed the CI that Elshafay proposed blowing up bridges leading to Staten Island, New York.  Id. ¶ 10.

In August 2004, Siraj proposed placing a destructive device in the 34th Street subway station, as he believed it was an important target that would cause substantial economic and transportation issues.  Id. ¶ 12.  On August 13, 2004, Siraj discussed with the CI how to organize a reconnaissance of the subway station and how to disguise their appearances during it. Id. ¶ 13.  He stated, "we will teach these bastards a good lesson."  Id.  During this conversation, Siraj acknowledged that some homeless people might be killed during the bombing and that the shopping mall located above the subway station would be destroyed.  Id.

On August 15, 2004, Siraj and the CI discussed the physical layout of the subway station, the best locations to place a bomb, using a timer on the bombs, and how to escape from the station without being detected.  Id. ¶ 14.  A few days later, the CI, Siraj, and Elshafay agreed to conduct surveillance at the 34th Street station.  Id. ¶ 17.  On August 21, 2004, the CI, Elshafay, and Siraj drove into Manhattan.  Id. ¶ 19.  Siraj and Elshafay entered the station and later discussed with the CI the security measures in place at the station and how to place explosive devices in the station; during the conversation, both Siraj and Elshafay drew diagrams of the station and gave them to the CI.  Id.  After Elshafay indicated that he was willing to place a bomb in the 34th Street subway station and Siraj stated he was willing to accompany Elshafay, provide surveillance, and aid in his escape, both Elshafay and Siraj were arrested on August 27, 2004.  Id. ¶¶ 20-21.

Following his arrest, Siraj admitted to drawing a map of the 34th Street station and to agreeing to help Elshafay carry the bomb to the station.  Id. ¶ 24.  He stated he was influenced by Elshafay and the CI, but eventually acknowledged that it was his idea to attack the subway station, that he was involved in planning the attack, and that he conducted his own private reconnaissance of the station three days before the August 21, 2004 group reconnaissance with Elshafay and the CI.  Id. ¶ 25.  Siraj said the goal of the attack was to cause economic loss to the United States as retaliation for United States military actions in the Middle East.  Id. ¶ 26.

Following a jury trial, on May 24, 2006, Siraj was convicted of one count of conspiracy to maliciously damage and destroy by means of an explosive, a building, vehicle and other real property, in violation of 18 U.S.C. § 844(n) ("Count One"); one count of conspiracy to wreck, derail and disable a mass transportation vehicle, in violation of 18 U.S.C. § 1993(a)(1) ("Count Two"); one count of conspiracy to place a destructive device in, upon, and near a garage, terminal, structure, supply and facility used in the operation of a mass transportation vehicle, in violation of 18 U.S.C. § 1993(a)(3) ("Count Three"); and one count of conspiracy to unlawfully deliver, place, discharge and detonate an explosive and other lethal device in, into,

and against a public transportation system, in violation of 18 U.S.C. §§ 2332f(a)(2), 2332f(b)(1)(B), 2332f(b)(1)(E) and 2332f(c) ("Count Four").  ECF No. 166.

    B.  Sentencing

On January 8, 2007, the Court sentenced the petitioner to 240 months' imprisonment each on Counts One, Two and Three, to run concurrently; 360 months' imprisonment on Count Four, to run concurrently with the other counts; 3 years of supervised release on Counts One, Two and Three, to run concurrently; and a life term of supervised release on Count Four, to run concurrently with the other counts. ECF Nos. 181, 182.  On direct appeal, the Second Circuit Court of Appeals affirmed the conviction and sentence. ECF No. 183 (Notice of Appeal); ECF No. 191 (Second Circuit Order affirming judgment).

Since 2010, the petitioner has repeatedly filed motions challenging his conviction and sentence, each of which has been denied. See, e.g., Shahawar Matin Siraj v. United States, No. 10-791, ECF No. 1 (motion to vacate, set aside, or correct sentence, filed on February 22, 2010); id., ECF No. 19 (August 30, 2013 Order denying motion to vacate, set aside, or correct sentence); Shahawar Matin Siraj v. United States, No. 13-4197 (2d Cir.), ECF No. 9 (request for a certificate of appealability of August 30, 2013 Order to the United States Court of Appeals for the Second Circuit); id., ECF No. 35 (March 17, 2014 Order denying request for certificate of appealability); No. 05-CR-104, ECF No. 200 (motion to vacate, filed on February 12, 2019); ECF No. 211 (Feb. 12, 2020 Order denying Rule 60 motion and transferring remainder of case to Second Circuit); ECF No. 212 (July 2, 2020 Order denying successive Section 2255 motion). Additionally, on March 6, 2017, the petitioner filed a motion for resentencing on the basis that his convictions under 18 U.S.C. §§ 1993(a)(1) and (3) (Counts Two and Three) violated the Double Jeopardy Clause, ECF No. 196, which the Court construed as a successive habeas petition and transferred to the Second Circuit, ECF No. 197.  The Second Circuit denied the petitioner leave to file the petition on November 6, 2017.  ECF No. 199.

    C.  The Bureau of Prisons' Response to the COVID-19 Pandemic

From the moment the pandemic began, the Federal Bureau of Prisons ("BOP") made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and Prevention ("CDC") and the World Health Organization.  Those efforts continue.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/.  As part of that plan, all newly arriving inmates who are not fully vaccinated are quarantined and not released into the general population until 10 days have passed; mask wearing by all workers in patient care areas is required; inmates with known or suspected infections are provided a face covering, tested, and placed in medical isolation for 10 days; and inmates who are fully vaccinated are tested following exposure to suspected or confirmed COVID-19 cases, among other requirements.

In addition, acting under the authority granted in the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences. This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.

Siraj is currently housed at FCI Otisville, and his projected release date is April 17, 2030.  Inmate Locator, BOP, https://www.bop.gov/inmateloc/ (last visited Dec. 1, 2022). BOP's aggressive efforts have extended to the medium security facility at FCI Otisville, where Siraj resides.  FCI Otisville houses 616 inmates.  See FCI Otisville, https://www.bop.gov/locations/institutions/otv/ (last visited Dec. 1, 2022).  As of the date of this response, FCI Otisville has 0 active inmate cases of COVID-19 and 2 active staff cases.  See COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Dec. 5, 2022).  To date, 312 inmates and 98 staff have tested positive for and recovered from COVID-19 at FCI Otisville, and 1 inmate and 0 staff have died from COVID-19.  See id.  As of the date of this submission, FCI Otisville is a "level 2" institution, see id., which is an improved status from the time the defendant filed his Motion.[1]  See Mot. at 29.

BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP administers the COVID-19 vaccine in accordance with applicable guidance.  Doses of the vaccine have been delivered to every BOP institution.  As of December 1, 2022, BOP has administered a total of 340,448 doses to staff and inmates nationwide.  Across FCI Otisville, 782 inmates have been fully vaccinated.  See COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Dec. 1, 2022).  And, as noted below and in Siraj's Motion, Siraj himself has been inoculated against COVID-19 with the Johnson & Johnson vaccine.

II.     Siraj's Motion for Compassionate Release Should Be Denied

A court may grant a motion for compassionate release only when both "extraordinary and compelling reasons" warrant early release and the sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of release. 18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. Roney, 833 F. App'x 850, 853 (2d Cir. 2020) (explaining that, even if the defendant presented extraordinary and compelling reasons for release, his motion could be denied based solely on a

---

[1]     "Level 2" refers to the institution's operational level.  Institutions determine their operational level (Level 1, Level 2, or Level 3) based on the facilities' COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations, and their respective community transmission rates.  At each level, an infection prevention procedure or modification to operations (such as inmate programming and services) may be made to mitigate the risk and spread of COVID-19. COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp#term_definitions (last visited Dec. 4, 2022).

consideration of the 3553(a) factors). The defendant bears the burden of showing that a reduced sentence is justified. See United States v. Pellegrino, 492 F. Supp. 3d 65, 68 (E.D.N.Y. 2020).

This Court should deny Siraj's Motion because: (i) he has failed to present an extraordinary and compelling reason justifying his release; and (ii) the Section 3553(a) sentencing factors do not support his release.

### A. No Extraordinary and Compelling Reasons Warrant Siraj's Early Release

Siraj has not met his burden to show an extraordinary and compelling reason for release. See United States v. Gotti, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020). The United States Sentencing Guidelines (the "Guidelines," or "U.S.S.G.") and BOP policy have established clear criteria to aid in a court's determination of when compassionate release is appropriate pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). See U.S.S.G. § 1B1.13; see also BOP Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)"), https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited Dec. 1, 2022).

The Second Circuit in United States v. Brooker (also referred to as United States v. Zullo), 976 F.3d 228, 237 (2d Cir. 2020), held that that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Although the government respectfully submits that Brooker was wrongly decided, Siraj has failed to identify "extraordinary and compelling reasons" even under Brooker, as the government discusses below.

#### i.   Siraj's Characteristics At The Time of The Offense Do Not Constitute Extraordinary and Compelling Reasons for His Release

The defendant argues that his young age, immaturity, and cognitive limitations at the time he committed his criminal offenses constitute extraordinary and compelling reasons for his release. Def. Mot. at 35. But the Court was already aware of the defendant's characteristics, including his age, at the time the Court imposed the original sentence in this case. Indeed, the defendant's counsel made many of the same arguments reproduced in Siraj's Motion during the sentencing in this case. See January 8, 2007 Sentencing Transcript, ECF No. 198 at 10 (defense counsel referring to the defendant as an "immature young man").

Similarly, the Court was already aware that the defendant alleged he had cognitive limitations at the time of sentencing. The psychological report of the defendant by Dr. Alan M. Goldstein that the defendant's Motion references as showing his "diminished cognitive ability," Def. Mot. at 38, was submitted to the Court prior to sentencing. ECF No. 198 at 10. Similarly, defense counsel argued at sentencing that the defendant was "not the brightest light bulb in the chandelier" and was easily manipulated. Id. Despite receiving this information from the defendant, the Court nonetheless found that the defendant had a "central" role in the bombing plot of the 34th Street subway station. Id. at 27. Indeed, the defendant admitted that it was his idea to bomb the subway station, and he played a significant role in planning the attack,

5

including conducting surveillance of the station on his own.  Under these circumstances, the defendant cannot show that his characteristics at the time of the offense constitute extraordinary and compelling reasons for his release.

ii.    Siraj's Original Sentence Does Not Constitute an Extraordinary and Compelling Reason for His Release

The defendant also argues that his "unconscionably lengthy sentence" constitutes an extraordinary and compelling reason for his release.  Def. Mot. at 41.  In support of this argument, the defendant argues that there was a severe sentencing disparity between him and his co-defendant, Elshafay, because the defendant proceeded to trial; his sentence is unconscionable due to the NYPD's alleged mass surveillance of Muslim communities; and his sentence is disproportionate to similarly situated defendants.  Id. at 42-47.

As a preliminary matter, the Second Circuit has held that a defendant may not use a compassionate release motion to "second-guess[ ] . . . the sentence previously imposed." United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021).

In any event, this Court is not required to consider sentencing disparities between Siraj and his co-defendant. See United States v. Roman, 2022 WL 363909, at *1 (2d Cir. Feb. 8, 2022) (affirming denial of compassionate release and explaining "there is no requirement that a district court consider or explain sentencing disparities among codefendants"); United States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008) ("We have held that section 3553(a)(6) requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants.").  Even so, Siraj's argument ignores the fact that the differences between his sentence and that of his co-defendant are the result of his own decisions to not cooperate, to obstruct justice by committing perjury, and to refuse to accept responsibility for his criminal conduct.

Relatedly, Siraj argues that his sentence is longer than similarly situated defendants, Def. Mot. at 47.  The majority of the cases the defendant cites involve defendants who pled guilty.  See id. at 47-48.  That Siraj received a longer sentence after trial than a sentence he may have received had he pled guilty does not present an extraordinary and compelling reason for release. A defendant in plea bargaining circumstances will often be "confronted with the certainty or probability that, if he determines to exercise his right to plead innocent and to demand a jury trial, he will receive a higher sentence than would have followed a waiver of those rights." Chaffin v. Stynchcombe, 412 U.S. 17, 30-31 (1973); see Edwards v. Artus, 2009 WL 742735, at *6 (E.D.N.Y. Mar. 20, 2009) ("Defendants routinely make and bear the consequences of the same wager that [defendant here] made."). For this reason, "the Supreme Court has upheld as perfectly constitutional the disparity between a sentence negotiated as part of a plea and one imposed after trial." Edwards, 2009 WL 742735, at *6 (citing Corbitt v. New Jersey, 439 U.S. 212, 218-19 (1978)); see Ramsey v. Graham, 2009 WL 3233535, at *5 (E.D.N.Y. Oct. 7, 2009) (rejecting the concept of the "trial penalty" because defendant had "rejected favorable pre-trial offers, against the advice of counsel, and chose the hazard of trial, cognizant of his exposure to stiffer penalties if convicted").

Siraj's decision to go to trial and resulting sentence does not justify compassionate release, particularly when he was sentenced to the lowest end of the Guidelines' range. See United States v. Lorenzano, 2021 WL 734984, at *4 (S.D.N.Y. Feb. 24, 2021) (denying compassionate release, finding that defendant's "assertion that he was unfairly punished for exercising his right to a jury trial and refusing to plead guilty along with his co-defendants [was] without merit"); Musa v. United States, 502 F. Supp. 3d 803, 812 n.9 (S.D.N.Y. 2020) (Sullivan, J.) (denying compassionate release, stating that defendant "would be hard pressed to argue" that a sentence enhancement, which was "likely the product of [defendant] having exercised his right to trial," presented an extraordinary circumstance).

Finally, Siraj argues that NYPD's allegedly discriminatory tactics led to his investigation and played a significant role at trial, which constitutes an extraordinary and compelling reason for release. Def. Mot. at 45. Similar to Siraj's age and characteristics, the jury and this Court have already had the opportunity to consider similar arguments regarding law enforcement's involvement at the time of the defendant's trial and sentencing. At trial, the defendant presented an entrapment defense due to the involvement of the CI, and the jury rejected that defense. See ECF 198 at 25. Similarly, at sentencing, the defense raised the argument that Siraj was manipulated by the CI. Id. at 11-12. The Court's sentence appropriately reflected the seriousness of Siraj's conduct; that he plotted his crime with a CI does not make the crime any less serious. Siraj's attempts to relitigate the original offense conduct in this case should be rejected and do not constitute extraordinary and compelling reasons for his release.

   iii. Siraj's Rehabilitative Efforts Do Not Meet the Extraordinary and Compelling Standard

Siraj also argues that his rehabilitation justifies a sentence reduction. Siraj's disciplinary record is relatively free from incident—excluding being absent from an assignment in 2011 and fighting with an inmate in 2008—and he has taken a number of courses and participated in and planned programming. He also submitted numerous letters from other inmates and states that he helped a correctional officer from being attacked by an inmate. While Siraj's efforts are commendable, "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason" for release. See 28 U.S.C. § 944(t).

As this Court recently observed, while "good behavior and efforts at rehabilitation are commendable," "model prison conduct is expected." United States v. Veliu, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022); see also United States v. Garcia, 2022 WL 672758, at *2 (S.D.N.Y. Mar. 7, 2022) ("Maintaining good conduct in prison is not uncommon, and indeed is expected."). Defendant's lack of disciplinary infractions and efforts towards rehabilitation do not rise to the level of "extraordinary and compelling." See, e.g., Veliu, 2022 WL 2484240, at *5 (finding that the defendant's continuous employment and completion of "234 hours of programming in five years" was "not sufficient to meet the required standard"); United States v. Gunn, 2022 WL 2077971, at *4 (S.D.N.Y. June 9, 2022) (concluding that "rehabilitation through participation in prison programs and religious organization does not constitute an 'extraordinary and compelling' justification for release"); United States v. Strong, 2021 WL 75660, at *5 (S.D.N.Y. Jan. 7, 2021) (concluding that the defendant's rehabilitation, while commendable, "is not unusual" and "does not support reducing his sentence by nearly five years").

   iv. <u>Siraj's Health Condition Does Not Constitute an Extraordinary and Compelling Reason for his Release</u>

   Siraj cannot establish that his health conditions are extraordinary and compelling reasons for release.  Siraj argues that his health conditions of obesity and hyperlipidemia place him at a heightened risk of suffering severe illness from COVID-19 and thereby constitute an extraordinary and compelling circumstance.  To be sure, the CDC has recognized that obesity "can make you more likely to get very sick from COVID-19."  <u>See</u> CDC, COVID-19, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Nov. 22, 2022).

   However, notably, Siraj has received the Johnson & Johnson vaccine (after previously refusing the Pfizer-BioNTech vaccine).  <u>See</u> Ex. A.[2]  Numerous courts in this Circuit have repeatedly held that compassionate release is not justified when the defendant is vaccinated, even when the defendant has a condition that would otherwise make him more vulnerable to COVID-19.  <u>United States v. Kosic</u>, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (denying compassionate release where defendant received the first dose of the Moderna vaccine and explaining that "courts in this circuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that his health conditions weighing in favor of release are no longer extraordinary and compelling"); <u>United States v. Harris</u>, 2021 WL 848865, at *1 (E.D.N.Y. Mar. 5, 2021) (denying motion for reconsideration where diabetic defendant had received first dose of Moderna vaccine); <u>United States v. Jackson</u>, 2021 WL 4150962, *3 (S.D.N.Y. Sept 13, 2021) (denying compassionate release where defendant suffered from hypertension, obesity and high cholesterol, but had been vaccinated); <u>United States v. Pabon</u>, 2021 WL 603269, at *3-5 (S.D.N.Y. Feb. 16, 2021) (denying compassionate release where defendant suffered from obesity and asthma, but had been fully vaccinated).

   Unfortunately, like many vaccinated individuals, Siraj contracted COVID-19.  <u>See</u> Def. Mot. at 50.  He argues that his continuing COVID-19 symptoms, coupled with his obesity, present an extraordinary and compelling reason for his release.  However, Siraj is recovering from COVID-19, and his condition of obesity can improve through diet and exercise.  <u>See</u> Ex. A.  Additionally, the undersigned attorney has spoken with an attorney for the BOP, who has informed the government that booster vaccinations are available to inmates and can be requested through TRULINCS, the inmates' email system.  While the government sympathizes with Siraj's health issues and any continuing COVID-19 symptoms, receiving a booster vaccination will help protect Siraj from another COVID-19 exposure.

---

   [2] The government submits a selection of Siraj's medical records, attached as Exhibit A, under seal to protect Siraj's health information.  <u>See</u> <u>Offor v. Mercy Med. Ctr.</u>, 167 F. Supp. 3d 414, 445 (E.D.N.Y. 2016) ("Courts in this Circuit have repeatedly held that information protected by [the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936] is not subject to a First Amendment or common-law right of access[,] and thus [they] have sealed docket entries and redacted documents that contain such information."), <u>vacated in part on other grounds</u>, 676 F. App'x 51 (2d Cir. 2017).

The Second Circuit has in multiple cases affirmed a district court's denial of compassionate release on medical grounds during the COVID-19 pandemic even where a defendant is obese and suffers other medical conditions as well. See, e.g., United States v. Sledge, 851 F. App'x 265, 266 (2d Cir. 2021) (affirming denial of compassionate release for a defendant suffering from obesity as well as pre-diabetes and hypertension); United States v. Sookdeo, 851 F. App'x 263, 264 (2d Cir. 2021) (same for obesity); see also United States v. Garcia, No. 09-CR-330 (KAM), 2021 WL 1616914, at *4 (E.D.N.Y. April 16, 2021) (holding defendant with "morbid obesity" and other medical conditions had not established "extraordinary and compelling" reasons for compassionate release); United States v. Gibson, No. 17-CR-657 (JS), 2020 WL 7343802, at *4 (E.D.N.Y. Dec. 14, 2020) (same for defendant with obesity, hypertension and asthma).

The risk from COVID-19 is further mitigated by the steps the BOP has taken to prevent the spread of COVID-19 and the fact that zero FCI Otisville inmates currently have the virus. See, e.g., Harris, 2021 WL 848865, at *1 (denying motion for reduced sentence and stating that "[t]hough the Court is sympathetic to Defendant's medical conditions, it is by no means certain Defendant will contract COVID-19, particularly in light of: (1) his vaccination; (2) the protective measures the BOP has taken to curb spread of the disease; and (3) the fact that only one inmate is currently testing positive for COVID-19 at his facility").

Although the government takes seriously the threat posed by the pandemic to incarcerated individuals and the heightened risk of complications faced by individuals, such as Siraj, with obesity, absent evidence that Siraj is presently at severe risk of illness, a generalized fear of a continuing danger posed by COVID-19 does not constitute an extraordinary and compelling reason. See, e.g., United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

> v.   Siraj's Conditions of Confinement Do Not Constitute an Extraordinary and Compelling Reason for His Release

Siraj's other complaints regarding conditions at FCI Otisville and other facilities also do not establish an extraordinary and compelling reason for his release. He argues, for example, that his family has been unable to visit him due to the COVID-19 lockdowns at his facility. While it is unfortunate that Siraj has been unable to see family members, lockdowns have been a consequence of the pandemic that are intended to keep inmates, visitors, and staff safe. Notably, because FCI Otisville is now a level 2 institution, visitation is permissible if visitors, inmates, and staff wear masks. FCI Otisville, https://www.bop.gov/locations/institutions /otv/ (last visited Dec. 1, 2022). Indeed, one court recently recognized that "FCI Otisville's mitigation efforts at controlling the spread of the coronavirus appear to be effective." United States v. Pelle, No. CR 16-00036 (NLH), 2022 WL 1115273, at *3 (D.N.J. Apr. 14, 2022). Siraj also complains that his conditions of confinement at other institutions, including the Metropolitan Detention Center ("MDC") and FCI Terre Haute, justify release. But Siraj's complaints constitute general grievances that are not particular to Siraj and apply to anyone incarcerated at these facilities. See, e.g., United States v. Crumble, No. 18-CR-32 (ARR), 2021 WL 236003, at *4 (E.D.N.Y. Jan. 25, 2021) ("[E]veryone

incarcerated at these facilities experienced those same conditions.  Thus, I do not give any weight to this proposed ground."  (citation omitted)).

### B.  The 3553(a) Factors Weigh Against Early Release

Even if extraordinary and compelling reasons were to exist here (which they do not), the Court should deny the motion in light of the relevant § 3553(a) factors.  Irrespective of the Court's analysis respecting the existence or lack thereof of extraordinary and compelling reasons, "a court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. O'Neil, No. 17-CR-444 (JMA), 2021 WL 1616915, at *1 (E.D.N.Y. Apr. 26, 2021).  Review of the factors in the instant case "presents an insurmountable barrier to relief." See Markou, 2020 WL 6945923, at *2.

The nature and circumstances of the offense weigh heavily against Siraj's early release.  As noted above, Siraj planned a terrorist attack that had the potential to take countless lives and wreak havoc on New York City's transportation system and economy.  And Siraj had a central role in that plan—as this Court recognized at the time of sentencing, Siraj "initiated the plan and brought it to the cooperating codefendant and the confidential informant. He repeatedly scouted the station to determine where best to place bombs and how to avoid detection. He even planned how the conspirators should dress and what exits and entrances to use."  ECF 198 at 27. His crimes are no less serious today.  See United States v. Kantor, 853 F. App'x 723, 726 (2d Cir. 2021) ("[C]ourts regularly consider how compassionate release would alter the aims of the original sentence.").

Siraj faced life imprisonment for his offense but was sentenced to the lowest end of the Guidelines' range.  A reduction to Siraj's sentence would "fail to achieve the important policies of the § 3553(a) factors—namely, providing just punishment, affording adequate deterrence, and promoting respect for the law." Unites States v. Tranese, 2021 WL 25371, No. 17-CR-559 (CBA), 2021 WL 25371, at *2 (E.D.N.Y. Jan. 4, 2021).  Considering these factors, release is not warranted in this case.

III.    <u>Conclusion</u>

In sum, Siraj's Motion fails to identify extraordinary and compelling reasons to warrant his early release, and the 3553(a) factors weigh against early release.  For the reasons above, Siraj's Motion for early release should be denied.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/ Nina C. Gupta
Nina C. Gupta
Assistant U.S. Attorney
(718) 254-6257

cc:    Clerk of the Court (NG) (by ECF and Email)
Mudassar Toppa, attorney for the defendant (by ECF and Email)